Good morning, and may it please the court, my name is Robert Jacobson. I'm appearing today on behalf of Fenwick & West, on behalf of Plaintiff Appellant Darnell McGary. I'd like to reserve two minutes for rebuttal, please. The District Court made an error of law here by dismissing at the pleading stage. The standard of law under which we're deciding this case is notice pleading under Rule 8A. We are not talking about any sort of heightened pleading standard. Of course, under Twombly and Iqbal, there has to be... Let me ask you something about Twombly and Iqbal. The words in those cases are capable of opening way up or closing way down. They're not too clear. When I read them, the combination of them, particularly Iqbal, I thought, well, the one thing this will be good for, without shutting out claims that really ought to get further, at least to summary judgment, is crazy people who file pro ses, where you can't understand what they're saying and they make accusations that if you believed them, they'd be actionable, but no one would believe them. Like, oh, I had a case, a woman from the Netherlands said that the Prime Minister of France and the Prime Minister of Italy kept raping her daughter, and that's why she needed asylum in the United States. Well, if she says that under oath, she may even believe it. She may be deluded, but it's so implausible that Iqbal seemed to set it up. This case, why isn't this Iqbal? Your Honor, first of all, of course, it's a pro se case, so... Exactly. And so, setting that aside... It's a mentally ill pro se. And I understand the Court's concern about policy there. We don't want to open the floodgates to every crazy person coming into court saying that the CIA is directing mind control beams. Well, we used to have the floodgates open, and I thought maybe Iqbal closed them. I believe that the Iqbal Court imposes a plausibility standard. Are the allegations, the factual allegations, are they plausible? And that does not mean are they likely on the merits to be correct. It's if you assume that they're true, are they enough to say that they're correct? So what's plausible here that ought to get further? Well, let me tell you, there's admittedly a lot in this amended complaint. If anything, there's too much in the amended complaint. But there are many allegations in here, and let me lay out two specific ones. Just say the most plausible. He's alleging that he's not getting sufficient medical care, either when he was confined to... He says, and he cites a case that says he ought to be getting medical care that could cure him. Well, there is no medical care that can cure him. You can get medications for paranoid schizophrenia, but they give you tardive dyskinesia if it's a bad case where you need a lot of medication. He says the medications give him tardive dyskinesia. Well, yeah. Nothing he can do about that. It's a real bad disease. So what else is there? Your Honor, I disagree. He has a specific allegation that he's not getting the individually tailored medical care. I don't believe that schizophrenia is incurable as anywhere on the record. Well, whether it's curable and treatable are two different things, right? Absolutely, Your Honor. Let me ask you about his retaliation claim. Tell me about his retaliation claim. Sure. The most significant one is that after he returned to the SCC, he said, I'm getting severe medical side effects from these drugs. I don't think I need them. I'm doing well without drugs, and I have a constitutional right to be free of unnecessary medication. He took him to court and won. He won. What retaliation does he say he's suffering? They threw him in the hall because of that. They say that they literally kept him locked away in a cell that was nothing more than a bed in a sink, a prison cell, and they wouldn't let him out of that until he took his meds. So on the one hand, he has a constitutional right to be free of unnecessary medication. Wait a minute. As I recall the jail record, he's very violent and dangerous when he's off his meds. When he's on his meds, he gets the side effects of tardive dyskinesia. Your Honor, I don't believe that's correct. The records, the jail records are from 15 years ago, back when he was in prison, circa 1990 to 2000. And he alleges in his complaint that he's high-functioning, he's able to maintain his position well without medications, or at least without the extraordinary medications that they were giving him, and that he has a right to be free from medications that he believes are unnecessary and downright dangerous to his health. And we have the motion to dismiss state your summary judgment. Motion to dismiss. So we have to take as true what he says. Absolutely. Unless they are totally implausible. Absolutely. Let me ask you about – go ahead, Justice Scalia. All right. Just to follow up on what Judge Silverman said and what Judge Kleinfeld said, what in this complaint makes the allegations of this mentally disturbed person plausible? Give us some examples of that. Or your best example, you know, plausibility. All right. Well, first of all, he does have mental illness, but he also has some experience here. He was in a mental hospital. He said, while I was at the mental hospital, I received great care. I got better. They helped me. They gave me the care that I needed, and I responded well to that. Then he got better, and he was sent back to the FCC, and he alleges that he didn't receive the care that he was entitled to, and as a result, his condition worsened. Specifically, he alleges that once he was released to the less restrictive alternative in 2004, that he was then given such deficient care that he gained weight. He's represented to me. He gained 100 pounds. He developed heart-dive dyskinesia, which he didn't have before. He had heart palpitations. And that Dr. McClung was essentially seesawing him on medications and just giving him more and more and more to the point where he had some sort of heart arrhythmia, and he had to be speedboated off the island in the middle of the night for emergency medical treatment. Speaking of Dr. McClung, it seems to me one of the deficiencies of this complaint, aside from the problems with plausibility, is it doesn't do much of a job of tying, let's say, the misconduct he alleges to specific defendants, right? I disagree, Your Honor. Let's talk about Dr. McClung, for example. He alleges that Dr. McClung is a sexual offender treatment provider. There's no question that for purposes of this litigation, he's an actor of the state. Mr. McGarry alleges that Dr. McClung did not give him the individualized treatment that he's entitled to, and instead just gave him drugs upon drugs upon drugs, and as a result, his condition worsened. He alleges specifically that from his own personal experience, which is not in the least bit implausible, he responded quite well before without those medications, or at least without those same combination of medications while at Western State. He alleges that Dr. McClung and other members of the RCTT, the residential community treatment providers, that once he complained about things such as sexual harassment by a guard or by an escort, then suddenly they said, oh, you're crazy. You obviously are making that up. And because of that, we need to double your medications. You said you wanted to reserve two minutes.  Thank you very much. Thank you, Mr. Jacobson. Good morning. Good morning. May it please the Court, my name is Robert Antonides, and I'm representing the SCC and DOC defendants in this case. Mr. Eugene Studer is here to represent Dr. McClung and will be answering any questions you have regarding the claims against Dr. McClung. How are you dividing your time? Eight minutes and two minutes. Thank you. We're here today because Mr. McGarry has once again failed to state a valid civil rights claim under 42 U.S.C. 1983. Mr. McGarry, even after being provided an opportunity to amend his pleadings, has failed to allege how each individual defendant personally participated in the deprivation of a clearly established constitutional right. In order to state a valid claim under 1983, Mr. McGarry needed to allege that he suffered a specific injury as a result of specific conduct of one of the defendants and that there was an affirmative link between the injury and the conduct of the defendant. Why isn't it plausible that he was put in unsafe areas or bad areas of the facility in retaliation for embarrassing the prison in court? Well, with regard to the retaliation claim specifically that he makes, he claims that he was placed in the other housing that he objects to because the doctors wanted to create the scenario where he decompensated. Mr. McGarry does not have a right to choose which part of the SEC he is residing in and it was a treatment decision made by the providers there. Would it be wrong, would it be improper if they did that because they didn't like having been sued? Well, there is a standard of professional discretion. However, if in theory they had done that specifically to get revenge for his claims, then yes, that would be. Isn't that what he says they did? No, he says they were doing it because they wanted to decompensate him in order to be able to involuntarily medicate him. Isn't that because he says they tried to medicate him before he took him to court, had a hearing and won, and so that's why they are doing this to him? Isn't that what he is saying? Actually, this original complaint about being placed in the housing occurs before they file a petition for involuntary medication. Once he is placed in the housing, he is there for a while, and then a petition is filed by Dr. Siebert. They have the hearing. Mr. McGarry wins. What does he say they did as a result of his winning? He says that they engaged in sensory deprivation as a result of that. Now, you would agree they can't do that in retaliation for... Not in retaliation. Isn't that what he says they did? We do not believe that the facts... I know, the facts may not be true, but isn't that what he says they did? No. You just said that. Well, we do not believe that it was done on the basis of retaliation, and we believe that... I know, I know. That's why you have a... Excuse me, excuse me. I'm not asking you if it's true. I'm asking you if that's what he says. I don't believe that is what he says. What does he say they did in retaliation? We do not believe that he makes a specific claim of retaliation with regards to that. Let me find... Could you refer to the complaint itself? I found it hard to understand, and I'm sure you can help us. If you could point to the particular complaint I am looking at. He complains in complaint 5.28 that he was moved to segregated housing. Which one are you looking at, the amended complaint? Yes, the amended complaint, Your Honor. 5.28. Okay. He alleges that he was moved to segregated housing to provoke him to decompensate. Wait, I can't find 5.28. This is the first amended complaint of ER 97? Yes. I will find the particular page. Page 5.28 is on page ER 111. Thanks. And we would first state that he has no right to housing placement and that it was not retaliation. We would also argue that there was no alleged personal participation on the part of Dr. Zeebert or Dr. Richards in that situation. The allegation is that Dr. Zeebert caused harassment through sensory deprivation in order to try to get him to decompensate, and we simply do not feel that that rises to a 1983 level or that it is a plausible allegation given the circumstances under Iqbal. This Court is allowed to draw reasonable inferences. Let me ask you a question about 5.28. Mm-hmm. First part of it, to the extent I can figure out what he's talking about, which is a limited extent. Yes, sir. He seems to be saying they put me in a bad cell, and I gather from other parts of the complaint that he's saying that's retaliation for his having sued him. Then he gets down to the second part, and he says that the reason they did it is to put sexual content from the vent above the cell designed to give him an erection or cause masturbation, all this crazy stuff. Mm-hmm. Is there any law that tells us, read the paragraph together, eliminate the crazy stuff, and see if what's left is plausible, or is the right way to read it, read the whole thing, and if there's crazy stuff, then it's implausible? Yes, Your Honor. As he is a pro se, his complaint must be construed liberally. However, a liberal interpretation of a civil rights complaint may not supply essential elements that are not initially pled in the pleadings, and conclusory and vague allegations will not support a cause of action. Well, that's not vague. It's real specific. It's just nuts. Well, and we would argue that it is not plausible given judicial experience and common sense, which is what this court is allowed to make the determination based on Ashcroft v. Iqbal.  And whether there are other more likely explanations for a defendant's conduct, such in this case, whether he was placed in this because of retaliation or because this was a treatment decision made by his treatment providers, given his circumstance and his unwillingness to take the medication, not as a result of retaliation, but because that is where he needed to be placed in order to exercise control over the FCC. There's a problem my colleagues have both raised with your answers, and I'd like to raise it too because I'm not sure you've got it. This is dismissal of the complaint. So except where it's insufficient and implausible under Iqbal and Twombly, we have to accept the allegations as true for purposes of deciding whether they state a claim upon which relief can be granted. So what the prison says about why it did things and what the truth is is totally irrelevant. We don't care. We assume that everything that you're saying about what the prison really says is false for purposes of deciding whether he states a claim. You just have to tell us why he doesn't. Well, we would say that in this case he has failed to argue that there is personal participation based on the named defendants in this case, such that even if that was to be the case, the individually named defendants in this case, it has not been established that they personally either caused this. He doesn't allege that Dr. Richards and Seisbert were part of the team that is in charge of his care? It is alleged that they are members of the RCTT, but that is not the group that decided to place him in the housing facility that he is the real broker. Says who? We don't believe it's sufficiently argued in the complaint as well as just that is... He alleges it, though. Well, just because he alleged it does not mean that it is necessarily the case, and although... I agree. That's why we have summary judgment where you... Summary judgments for. Look, I don't know how to make a decision on some of this stuff because I don't know about authority, and maybe you can help me. 5.29 is a typical example, and since we've got our books open to it, might as well use it. He says Dr. Seisbert prescribed Zyprexa. Dr. Seisbert noted side effects, weight gain, metabolic syndrome, and tardive dyskinesia. Well, those are pretty standard side effects of a high dose over a long period of time of Zyprexa. It makes people fat. Metabolic syndrome just means growing obesity leading to diabetes and tardive dyskinesia. That's what you get. On the other hand, it's just what you give for psychosis. It's the state-of-the-art drug. Well, there's authority saying if the drug doesn't make them better, then it's cruel and unusual punishment to give it to them. That's the drug they give to people with this kind of psychosis if they're not in prison. How do we reconcile the authority that says you have to be making them better with the nature of the disease and the medication and decide on 12B6? I don't really know what to do. Is there any authority? Well, we believe that the authority exists under Ashcroft, Bickwell, and Fombley to make the determination that the explanation proffered by the plaintiff in this case is not a plausible explanation. But here it is plausible. It's perfectly plausible that they gave him Zyprexa, and he complained because it gives me weight gain, metabolic syndrome, and tardive dyskinesia. And it's perfectly plausible that the doctors knew that because it's right on the package insert with the drug. And it's perfectly plausible that he doesn't like these side effects. There's nothing implausible about that. But that doesn't rise to the level of deliberate indifference in this case. The doctors are allowed to treat him as they see fit, provided that it doesn't violate professional discretion. And even if he doesn't like the medication that he's been prescribed, he does not have a right to argue that that is, therefore, deliberate indifference to his medical condition. He has the right to not take it, which he didn't. And the SEC had the right to try to have an involuntary medication hearing, and they lost that. So no rights were violated. Thank you. If there are no further questions of counsel, we'll call on Mr. Struder. Thank you very much, sir. Good morning. May it please the Court, Gene Struder. We're going to reset the clock to two minutes. May it please the Court, Gene Struder, on behalf of Dr. McClung. I'd like to bring you back to the discussion of retaliation. If you will look at ER 528, ER 111, and right after it, paragraph 529, I think there's been some misunderstanding about what occurred and how it occurred. Recall that Mr. McGarry was medicated, or part of the agreement to go into this less restrictive alternative was his agreement to be medicated as part of the whole package. He then, during the period of time at the SCTF, between September of 2004 to March of 2005, at that point, at some point, and we believe it was sometime around February, that he stopped taking the medications. What happened is 528 says that he was, when he stopped taking the medication, that's when this event occurred, and that it was afterwards, on April of 2005, that he then requested the involuntary medication hearing because he hadn't been taking his medications. That hearing occurred, and there was, followed by a judicial determination in May of 2005, that's conditions for his confinement, that was on, I refer you to 5.15 at ER 103. So there was a process that went on that allowed him to not take it, but at the same time lost, he lost, therefore he lost his least respective alternative. If I got this right, he was taking his Cyprexa, and it had bad side effects. He said, I don't want to take it anymore. The court said, okay, you don't have to take it. Then he got more nuts, and they put him in the hole? No, this happened. Is that what he's saying? I don't think that's what he's saying, Your Honor. That's the point. I mean, this happened before. He was in the program. He stopped his medications. As a consequence of stopping his medications, they then put him, they removed him, they brought him back to the SCC. And at that point, in order to try to get him to take his medications, he refused to do so, and then the involuntary medication process occurred. And that's set out, I believe, in the complaint, and that's where we refer to that. Very briefly, Your Honor, Can I just ask you, Judge Layton ruled that the plaintiff didn't allege that Dr. McClung was personally responsible. Yes. Now I'm looking at paragraph 4.4. It says, Defendants Dr. Mark McClung is in private practice and supervises Dr. Leslie Cybert. Both are responsible for the plaintiff's care. Why isn't that an adequate allegation? Well, he's responsible for his care, but in terms of the two, the issues of care, one was the issue of negligent care, which does not rise to the level of constitutional. Mr. McGarry alleges that he was, that Dr. McClung was negligent. That's the care. I think what the court is referring to was that Dr. McClung did not personally participate in, other than beyond the medical decisions he had to treat Mr. McGarry, as to what occurred by the SEC staff is something independent. So if a plaintiff says, this guy is responsible for my care and treatment, you would say that doesn't sufficiently allege personal responsibility? Yes, we would allege that. And I think that Dr. McClung needs to be considered separately and independently in this matter. Thank you very much, sir. Okay. The appellant gets the last word. I think you had two minutes left, Mr. Jacobson. Thank you, Your Honor. First, just to dial this back a bit, I hear the court's policy concerns about opening the courthouse door to everybody who comes in with. It's not just, it's not really the flood of litigation concern that I have. My concern is these medications, well, for one thing, they're pretty well-known medications. For another, you can look up the manufacturer's products inserted on the net, and they cause exactly the side effects he complains of. Medication is poison. It does some good things, does some bad things. He's got a bad, incurable disease. I just, I don't see what harm he's alleging that's any different from a patient who isn't a criminal and gets treated at Kaiser Permanente by a perfectly competent psychiatrist. Well, Your Honor. She will get fat, and she will develop twitches and all kinds of bad stuff from this medication. Your Honor, I would submit that, first of all, we're still at the Rule 12 stage. If we were to dismiss this complaint, then what could a person with schizophrenia allege if he actually was receiving deficient care? This would be essentially an impenetrable bar. I think we have to hope and assume that most people are getting good care in the system, but it's certainly plausible. All they give me is aspirin for my schizophrenia. They don't give me any of the drugs that give me tardive dyskinesia, metabolic syndrome, maybe diabetes. That's what they'd have to allege. I mean, he's getting the standard care for schizophrenia, according to his own allegation. He's also alleging retaliation. He has a constitutional right not to be involuntarily medicated with medications he considers harmful. He exercises those rights. So we have to accept as plausible his medical judgment. I don't believe that we should assume that he has no say in the matter. He is a person who has experience in the system. He received care that he believes was perfectly good when he was in the system. He's a violent sex criminal. If he doesn't get the drugs that calm him down, they're going to have to have some restraint on him. What else can happen? Well, Your Honor, he alleges that he did not need restraint, that he was at a high-functioning level. There's nothing in the record that suggests otherwise for the relevant time period here. I see that I'm over time. Why don't you finish your answer to Judge Kleifel's question and then we'll conclude. All right. So there is nothing in the record that contradicts his assertions about what happened in 2006. He alleged specifically I was being over-medicated, not simply getting standard of care treatment, but they were giving me way too much standard of care, essentially. I had severe medical side effects as a result. I used my informed judgment to say too much. I don't want these. He then brought an administrative hearing. He embarrassed his doctors. The administrative law judge or the panel found that these drugs were not medically required. He won. And as a result, he says, they kept me in the hole. We're not letting you out until you take your meds. So even if he's a danger, accepting everything that you say is true, there's nothing in the record here that requires him to be kept in the hole on an indefinite basis. And surely that alleges a cause of action under the 14th Amendment for both retaliation of First Amendment rights or other rights under Harper as well as. Could you wrap it up, please? Thank you. Yeah. Thank you very much. Thank you very much. Okay. The case just argued is submitted. Gentlemen, thank you. Mr. Jacobson, thank you as well. Are you handling this on a pro bono basis? Yes. We want to thank you very much for accepting the appointment. Appreciate it very much.
judges: Kleinfeld, Tashima, Silverman